IN THE CIRCUIT COURT OF LAWRENCE COUNTY, ARKANSAS
CIVIL DIVISION

**ALEXIS BORRESON and**
**JADA BORRESON**                                                                 **PLAINTIFFS**

v.                            Case No.: 38CV-23-45

**NITRO LIFT TECHNOLOGIES LLC and**
**LACY JONES, JR.**                                                                **DEFENDANTS**



FILED
MAY 0 2 2023
10:01pm
Circuit Clerk
Lawrence Co., AR

## COMPLAINT

COMES NOW, Plaintiffs, Alexis Borreson and Jada Borreson, by and through their attorneys Charsie Gordon and Taylor King & Associates, P.A., and for this Complaint against Defendants, Nitro Lift Technologies LLC (herein "Nitro Lift"), and Lacy Jones, Jr. (herein "Jones") states as follows:

## PARTIES

1. Plaintiffs are individual residents of Lawrence County, Arkansas.

2. Defendant Nitro Lift is an Oklahoma Corporation. The registered agent for service of process for Nitro Lift is Vernon Daniels, 8980 OK Highway 1 South, Mill Creek, Oklahoma 74856.

3. Upon information and belief, Defendant Jones is an individual resident of Harris County, Texas.

4. The events giving rise to this cause of action occurred in Lawrence County, Arkansas.

1

5. The facts giving rise to this case occurred within the three years last past.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this claim pursuant to Ark. Code Ann. § 16-60-112.

7. Defendant Nitro Lift has substantial and continuous contacts with the State of Arkansas including transacting business and using Arkansas roadways to haul, transport, and deliver freight. Defendants Nitro Lift and Jones are therefore subject to general and specific personal jurisdiction in the State of Arkansas.

## FACTS

8. Nitro Lift hauls liquids/gases and oilfield equipment across the roadways of the United States. Nitro Lift has a fleet of 25 trucks and 25 drivers. As of January 24, 2023, Nitro Lift reported its fleet drove 646,500 miles across the United States, including the state of Arkansas, in 2022.

9. On November 5, 2020, Defendant Jones was driving a tractor-trailer under Nitro Lift's USDOT No. 1630891.

10. Upon information and belief, the truck being driven by Jones on November 5, 2020, was owned by Nitro Lift.

11. On November 5, 2020, Plaintiff was travelling southbound on Highway 67 driving next to Defendant Jones's vehicle.

12. The vehicle Plaintiff was driving was owned by Separate Plaintiff Jada Borreson, .

13. Defendant Jones was also travelling southbound when Defendant failed to maintain control of their vehicle, drifted into Plaintiff's lane striking Plaintiff's vehicle spinning it into oncoming, northbound, traffic where Plaintiff's vehicle was struck by a third-party.

14. The Federal Motor Carrier Safety Administration ("FMCSA") uses a Safety Measurement System ("SMS") to measure and gauge the safety of trucking carriers in the United States and reports data collected within the previous two years.

15. According to the FMCSA's SMS, in the two years before the filing of this complaint, motor carrier enforcement officers inspecting Nitro Lift drivers and tractor-trailers found

   a) <u>At least 2 unsafe driving violations</u> by Nitro Lift. These violations include speeding 6-10 miles per hour over the speed limit and lane restriction violation..

   b) <u>At least 2 hours-of-service compliance violations</u> by Nitro Lift. These violations include driver failing to maintain ELD instruction sheet and driver failed to manually add shipping document number.

   c) <u>At least 17 vehicle maintenance violations</u> by Nitro Lift. These violations include, but are not limited to, inoperable required lamp, no/improper tractor protection valve, brake connections with leaks or constrictions, brake hose or tubing chafing and/or kinking under vehicle, clamp or roto type brake out-of-adjustment, tire-ply or belt material exposed; tire-flat and/or audible air leak, no/insufficient warning devices, brake system pressure loss, and oil and/or grease leak.

   d) <u>At least 3 hazardous materials compliance violations</u> by Nitro Lift. These violations include no identification number on bulk packaging, cargo tank not marked with proper shipping name for gases, and no or improper shipping papers.

3

e) <u>At least 2 driver fitness violations</u> by Nitro Lift. These violations include without limitation, operating a property-carrying vehicle without possessing a valid medical certificate – no previous history and expired medical examiner's certificate.

f) At least 2 crashes in at least 2 states.

16. Nitro Lift controlled, managed, and supervised the manner, method, and procedure for how this load would be transported, including the date and time the load was to be picked up and delivered, the route to be taken, payment restrictions, and extensive driving instructions.

17. At the time of the crash on November 5, 2020, and at all times relevant to this Complaint, Jones was acting within the scope of his agency and employment, and under the control of Nitro Lift.

18. As a result of the relationship between Nitro Lift and Jones, all alleged acts, omissions, negligence, and recklessness of Jones set forth in this Complaint are imputed to Nitro Lift under the doctrine of *respondeat superior*.

19. Further, Nitro Lift had a duty to reasonably investigate, monitor, retain, and train Jones with respect to safety issues.

20. As the direct, foreseeable, legal, and proximate result of the negligence of Nitro Lift and Jones, Plaintiff Alexis Borreson sustained personal injuries, and physical damage and loss of use of Plaintiff Jada Borreson's vehicle.

## COUNT I: ORDINARY NEGLIGENCE OF NITRO LIFT AND JONES

21. Plaintiffs incorporate each and every foregoing paragraph by reference as if set forth herein word for word.

22. At the time of the collision, the ordinary negligence of Nitro Lift and Jones included without limitation:

4

    a) Jones and Nitro Lift and through the theory of *Respondeat Superior*, engaged in careless and prohibited driving in violation of Ark. Code Ann. § 27-51-104;

    b) Jones and Nitro Lift by and through the theory of *Respondeat Superior*, failed to control the speed of the vehicle as was necessary to avoid a collision, in violation of Ark. Code Ann. § 27-51-201;

    c) Jones and Nitro Lift by and through the theory of *Respondeat Superior*, failed to keep a proper lookout in violation of Ark. Code Ann. § 27-51-104(a);

    d) Jones and Nitro Lift by and through the theory of *Respondeat Superior*, failed to keep the vehicle under proper control in violation of Ark. Code Ann. § 27-51-104(b)(6); and

    e) Jones and Nitro Lift by and through the theory of *Respondeat Superior*, failed to use the highest degree of care.

23.    Nitro Lift failed to have in place and/or failed to follow adequate and proper policies and procedures for safety of the commuting public.

24.    Nitro Lift failed to have in place and/or failed to follow adequate and proper policies in accordance with accepted industry standards ordinarily used by companies in the same or similar business.

25.    This ordinary negligence was a proximate cause of the injuries and losses sustained by Plaintiff, set out herein.

## COUNT II: NEGLIGENT HIRING

26.    Plaintiff incorporates each and every foregoing paragraph by reference as if set forth herein word for word.

27. Nitro Lift had a duty to have adequate policies and procedures in place to ensure the persons it allowed to drive under its USDOT number, control, and supervision were competent, safe, adequately trained, and qualified.

28. Nitro Lift had a duty to have adequate policies and procedures in place to ensure the persons it hired to operate a commercial motor vehicle were competent, safe, adequately trained, and qualified.

29. Nitro Lift had a duty to ensure that persons it retained to haul freight were competent, safe, adequately trained, and qualified.

30. Nitro Lift failed in their duties and were negligent when they chose not to have in place or chose not to follow proper policies and procedures, hiring of a driver who was neither qualified nor competent to exercise sound judgment and safely operate a commercial tractor-trailer.

31. Nitro Lift's negligence in hiring an unqualified and incompetent driver were proximate causes of the injuries sustained by Plaintiff Alexis Borreson and the damages set forth below.

32. Nitro Lift failed to have in place adequate policies and procedure to prevent the negligent hiring of employees who do not meet the minimum industry standards.

## COUNT III: NEGLIGENT TRAINING

33. Plaintiffs incorporate each and every foregoing paragraph by reference as if set forth herein word for word.

34. Nitro Lift had a duty to have adequate policies and procedures in place to ensure they properly and sufficiently trained their drivers on safe driving practices and techniques.

6

35. Nitro Lift did not train Jones on using safe driving practices and techniques before placing him in an employment position as one of their drivers.

36. Nitro Lift failed in their duties and were negligent when they chose not to have in place or chose not to follow proper policies and procedures, resulting in the inadequate training of drivers who were not qualified and competent to exercise sound judgment and safely drive a commercial tractor-trailer.

37. Nitro Lift's negligence in failing to properly train Jones was a proximate cause of the injuries and damages sustained by Plaintiffs and the damages set forth below.

38. Nitro Lift failed to have in place adequate policies and procedure to prevent the negligent retention of employees who do not meet the minimum industry standards.

39. Nitro Lift failed to have in place adequate policies and procedure to prevent the negligent training of employees who do not meet the minimum industry standards.

## COUNT IV: NEGLIGENT SUPERVISION

40. Plaintiffs incorporate each and every foregoing paragraph by reference as if set forth herein word for word.

41. Nitro Lift had a duty to have adequate policies and procedures in place to ensure they properly and sufficiently supervised their drivers.

42. Nitro Lift did not supervise Jones to ensure he was using sound judgement and practicing safe driving techniques and habits while driving under Nitro Lift's USDOT number and as a driver for Nitro Lift.

43. Nitro Lift failed in their duty and were negligent when they chose not to have in place or chose not to follow proper policies and procedures, resulting in the inadequate training of Jones.

44. The failure of Nitro Lift to consider and act upon the safety concerns and to properly train Jones is negligence.

45. Nitro Lift's negligence includes, but is not limited to, failing to train Jones about the duties imposed by the Federal Motor Carrier Safety Act (FMCSA), especially those regulations regarding speed, following too closely, keeping vehicles under control, and driving safely for the conditions.

46. Nitro Lift's negligence in failing to properly train Jones was a proximate cause of the injuries and damages sustained by Plaintiffs and the damages set forth below.

47. Nitro Lift failed to have in place adequate policies and procedure to prevent the negligent supervision of employees who do not meet the minimum industry standards.

## COUNT V: NEGLIGENT RETENTION

48. Plaintiffs incorporate each and every foregoing paragraph by reference as if set forth herein word for word.

49. Nitro Lift had a duty to have adequate policies and procedures in place to ensure that they properly and sufficiently retained qualified and competent drivers.

50. Nitro Lift failed in their duty and were negligent when they chose not to have in place or chose not to follow proper policies and procedures resulting in the retention of unqualified and incompetent drivers.

51. Nitro Lift's negligence in retaining Jones was a proximate cause of the injuries sustained by Plaintiff and the damages set forth below.

52. Nitro Lift failed to have in place adequate policies and procedure to prevent the negligent retention of employees who do not meet the minimum industry standards.

## DAMAGES

53. Plaintiffs incorporate each and every foregoing paragraph by reference as if set forth herein word for word.

54. As a result of the Defendants' actions described herein, Plaintiff Alexis Borreson sustained serious personal injury, and has endured pain, suffering, and mental anguish.

55. As a result of the Defendants' actions described herein, Plaintiff Jada Borreson also suffered property damage to her vehicle including the loss of use of that vehicle.

56. Plaintiffs seeks damages for the nature, extent, and duration of the injuries.

## JURY TRIAL DEMANDED

57. Plaintiffs demand a trial by jury.

58. Plaintiffs seek damages in an amount in excess of the amount necessary for federal jurisdiction in diversity cases.

WHEREFORE, premises considered, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of the amount necessary for federal jurisdiction in diversity of citizenship cases, the exact amount to be determined by a jury, for punitive damages, for attorneys' fees and costs of this litigation, and for all other relief to which he may be entitled.

Respectfully submitted,

ALEXIS BORRESON AND JADA BORRESON, PLAINTIFFS

By: _____
Charsie Gordon, Ark. Bar No. 2016059
TAYLOR KING & ASSOCIATES, P.A.
820 West 3rd Street
Little Rock, Arkansas 72201
Phone/Fax: (501) 712-2543
charsiegordon@taylorkinglaw.com

9